IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

VMEKE AVERHART, etc.,

                            Plaintiff,                  Case No. 3:09 OE 40028

        -vs-

                                            <u>MEMORANDUM   OPINION</u>

ORTHO-MCNEIL-JANSSEN
PHARMACEUTICALS, INC., et al.,

                            Defendant.

KATZ, J.

       Plaintiff B. Averhart, who was a minor when this case was filed, brought this action by her

guardian against Defendants Ortho-McNeil Pharmaceuticals, Inc., now known as Janssen

Pharmaceuticals, Inc., McKesson Corporation, and five hundred John Does.  Ms. Averhart alleged

that she was injured by using the transdermal birth control patch Ortho Evra®.  Originally filed in

the United States District Court for the Southern District of Mississippi, the Judicial Panel on

Multidistrict Litigation transferred the case to this Court.  Before the Court is Defendants' motion

for summary judgment on Ms. Averhart's claims of negligence, breach of express and implied

warranties, negligent misrepresentation, and fraud.  (Doc. No. 31).  Ms. Averhart has filed a

response (Doc. No. 34), and Defendants have filed a reply.  (Doc. No. 35).

I. Background

       The Court summarized the following facts in its opinion of March 24, 2014.  (Doc. 28).

Ortho Evra® is a hormone-based birth control medication delivered transdermally by a patch.  A

user wears one patch per week on her skin for three weeks, wears no patch for the fourth week,

then begins the cycle again.  To work transdermally, Ortho Evra® delivers a higher

dosage—approximately 60% higher—of estrogen than oral contraceptives.  "Increased estrogen exposure may increase the risk of adverse events including venous thromboembolism."

In 2008, Ms. Averhart, then sixteen, went to the Jackson County (Mississippi) Health Department clinic seeking birth control.  She went alone, but with her mother's permission.  At the clinic, a family nurse practitioner and a nurse saw Ms. Averhart and, following an exam and discussion, offered her a choice of receiving birth control by a patch, a pill, or a shot.  Ms. Averhart says she chose the patch because:  "I'm afraid of needles, to get shots.  And with pills, I know you have to take them every day at the same time and I didn't want to forget to take my pills."  She was given a two-month sample of Ortho Evra®.

Around three months later, Ms. Averhart suffered pain and swelling in both legs that rendered her unable to walk or dress herself.  Her mother took her to the hospital where she was admitted and diagnosed with bilateral deep vein thrombosis.

## II. Jurisdiction and Choice of Law

Ms. Averhart originally filed this action in the United States District Court for the Southern District of Mississippi.  Ms. Averhart is a citizen of Mississippi, Ortho-McNeil is a Delaware corporation with its principal place of business in New Jersey, and McKesson is a Delaware corporation with its principal place of business in California.  Because the amount in controversy exceeds $75,000, the district court had jurisdiction over this case.  28 U.S.C. § 1332.  The Judicial Panel on Multidistrict Litigation consolidated this case with numerous others under MDL Number 1742 and assigned the cases to this Court pursuant to 28 U.S.C. § 1407.  The parties agree that Mississippi law applies to this case.

## III.  Summary Judgment Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  A court does not weigh the evidence or determines the truth of any matter in dispute.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted).  If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586).  The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient.  *Anderson,* 477 U.S. at 248–52.

IV.  Availability of Summary Judgment

3

Ms. Averhart asserts that the Defendants are not entitled to have their motion for summary judgment considered by the Court.  The Court previously denied Defendants' Federal Rule of Civil Procedure 12(c) motion regarding the issues that are the subject of the current summary judgment motion.  (Doc. No. 28, pp. 8–10).  Ms. Averhart argues that given the Court's prior decision, under Federal Rule of Civil Procedure 12(g)(2), the Defendants are now prohibited from seeking summary judgment on the issues in question.  Rule 12(g)(2) explicitly states that the prohibition in question only applies to motions under Rule 12.  A motion for summary judgment is under Rule 56(a).  Therefore, Rule 12(g)(2)'s restriction is inapplicable to Rule 56(a).  *See Shrader v. Beann*, 503 F. App'x 650, 654 (10th Cir. 2012); *Ennenga v. Starns*, 677 F.3d 766, 772–73 (7th Cir. 2012); *Conrad v. Phone Directories Co.*, 585 F.3d 1376, 1383 n.2 (10th Cir. 2009).

### V.  Discussion

Defendants argue that Ms. Averhart's negligence claims are "subsumed by Mississippi's Products Liability Act ("MPLA")."  (Doc. 35, p. 5).  The MPLA states in relevant part:

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(I) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

4

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

Miss. Code Ann. § 11–1–63.

In *Lawson v. Honeywell Int'l, Inc.*, 75 So.3d 1024, 1026 (Miss. 2011), the Mississippi Supreme Court was presented with the following questions:

I.  Whether the trial court erred in holding that Honeywell was not a "manufacturer" for purposes of the MPLA, and in therefore granting Honeywell's motion for summary judgment as to Lawson's MPLA claim.

II.  Whether the trial court erred in holding that the MPLA is the exclusive remedy for products liability actions in Mississippi, and in therefore granting Honeywell's motion for summary judgment as to Lawson's common-law negligence claim.

The court noted that the "MPLA provides the exclusive remedy for strict-liability claims against a manufacturer or seller for damages caused by a product that has a design defect rendering it unreasonably dangerous." *Id*. at 1027.  In interpreting the word "manufacturer" for the purposes of the statute, the court concluded that a manufacturer was "a person or company who regularly and in the course of their principal business, create[s], assemble[s] and/or prepare[s] goods for sale to the consuming public." *Id*. at 1028 (internal quotation marks and citations omitted).  The court went on to hold that a manufacturer "produces goods as a principal part of its business and sells them either directly or for resale to the consuming public." *Id*. at 1029 (internal quotation marks and citation omitted).

Having defined the word manufacturer in the MPLA, the Mississippi Supreme Court stated:

Interpreting the MPLA as a whole reveals that claims against nonmanufacturing and nonselling designers are outside the scope of the statute.

5

The MPLA addresses what plaintiffs must prove to hold "manufacturers" and "sellers" liable for damages caused by a product.  Miss. Code Ann. § 11–1–63 (Rev. 2002).  Because the statute applies only to manufacturers and sellers, a person or entity other than the manufacturer or seller—who negligently designs a product—may be held liable for common-law negligence or under any other available theory of liability.  As discussed above, the "common and ordinary acceptation and meaning" of "manufacturer" does not include mere designers of a product.  Read plainly, the MPLA does not address what a plaintiff must prove in an action against a product designer.

This Court "cannot . . . add to the plain meaning of the statute or presume that the legislature failed to state something other than what was plainly stated." *His Way Homes, Inc. v. Miss. Gaming Comm'n*, 733 So.2d 764, 769 (Miss. 1999).  The Legislature did not state that the MPLA applies to, or precludes, claims against designers of a product.  Holding that the MPLA is applicable to such claims would constitute an improper addition to the statute, since designers plainly are omitted.

In its brief, Honeywell cites *Jowers v. BOC Group, Inc.*, a federal district-court case which held that the MPLA abrogated common-law negligence claims of product defect.  *Jowers v. BOC Group, Inc.*, 2009 WL 995613, at *4 (S.D. Miss. April 14, 2009) *aff'd in part, vacated in part on other grounds, and remanded sub nom.*, *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346 (5th Cir. 2010).  The court in *Jowers* held that the MPLA precluded common-law negligence claims against a manufacturer.  *Id.* at *4.  Neither *Jowers* nor any other Mississippi case cited by Honeywell stands for the proposition that a negligence claim against a defendant who is not a "manufacturer" or "seller" is precluded by the MPLA.

We hold that the MPLA does not preclude common-law negligence claims against nonmanufacturing designers who do not fall under the purview of the statute.  Accordingly, we reverse the trial court's grant of summary judgment to Honeywell with respect to Lawson's common-law negligence claim.

## CONCLUSION

The plain meaning of the MPLA and this Court's previous definition of "manufacturer" for strict-liability purposes mandate a finding that a mere designer is not a manufacturer subject to liability under the MPLA.  Accordingly, we affirm the trial court's grant of summary judgment to Honeywell as to Lawson's statutory claim.

However, the MPLA does not preclude claims against defendants who are neither manufacturers nor sellers, as those terms are understood in the statute.  Accordingly, we reverse the trial court's grant of summary judgment to Honeywell as to Lawson's common-law negligence claim, and remand for further proceedings consistent with this opinion.

*Id.* at 1029–30.

6

Given the Mississippi Supreme Court's discussion of the MPLA and the *Jowers*'s decision discussed in *Lawson*, the Court finds that the MPLA subsumes Mississippi's common law negligence claims.  The Court notes that this conclusion is also consistent with the recent decision from the United States District Court for the Southern District of Mississippi in *Austin v. Bayer Pharm. Corp.*, No. 5:13-CV-28-KS-MTP, 2013 WL 5406589, at *5 (S.D. Miss. Sept. 25, 2013).  In *Austin*, the court also found that the MPLA subsumed common law negligence claims based on a defective product.  Accordingly, the Defendants' motion for summary judgment regarding Ms. Averhart's negligence claim is granted.

Ms. Averhart alleged a claim of negligent misrepresentation.  Like her claim regarding negligence, the MPLA subsumed common law misrepresentation claims based on a defective product.  *Austin*, 2013 WL 5406589, at *8.

Ms. Averhart alleged a claim of breach of express warranty.  Under Miss. Code Ann. § 11-1-63(a)(i)(4), Ms. Averhart must establish that the Ortho Evra® patch "breached an express warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product."  *See also Forbes v. Gen. Motors Corp.* 935 So.2d 869, 875 (Miss. 2006).  Ms. Averhart has failed to satisfy these requirements.

The facts establish that on October 2, 2008, Ms. Averhart went to the Jackson County Health Department seeking birth control.  (Doc. No. 31-4, p. 2).  Before her visit, Ms. Averhart had admittedly never discussed birth control options with anyone.  (Doc. No. 31-4, p. 3).  She did not know anyone who had used the Ortho Evra® patch, had never heard of the patch, had never seen an advertisement about the patch, and had never read anything about the patch.  (Doc. No. 31-4, p. 3).  At the health department, Ms. Averhart was presented with various birth control

7

options and chose the Ortho Evra® patch because she was afraid of needles and was concerned she might forget to take a pill.  (Doc. No. 31-4, p. 3).

Ms. Averhart admittedly relied upon the independent medical judgment of the healthcare provider in choosing the birth control method.  (Doc. No. 31-4, p. 7).  Section 11-1-63(a)(i)(4) is explicit that "express factual representations upon which the claimant justifiably relied in electing to use the product" must occur for there to be a breach of an express warranty.  *See also Forbes*, 935 So.2d at 875.  The record establishes that such an expressed factual representation by the Defendants to Ms. Averhart, which Ms. Averhart relied upon, did not occur in this case.  *See id*. at 875–76.  Therefore, Defendants are entitled to summary judgment on this issue.

Ms. Averhart alleged a breach of implied warranty.  Ms. Averhart does not explain in her complaint whether the breach is for an implied warranty of fitness or merchantability.  Further, the claim is not discussed by Ms. Averhart in her response to Defendants' motion for summary judgment.

Under Mississippi law,

[i]n order to recover under the theory of implied warranty of fitness for a particular purpose, a plaintiff must present evidence sufficient for the jury to find:  (1) the seller at the time of the contracting had reason to know the particular purpose for which the goods were required; (2) the reliance by the plaintiff as buyer upon the skill or judgment of the seller to select suitable goods, and (3) the goods were unfit for the particular purpose.

*Moss v. Batesville Casket Co.*, 935 So.2d 393, 399 (Miss. 2006) (internal quotation marks and citations omitted); *see also McNabb v. L.T. Land & Gravel, LLC*, 77 So.3d 1140, 1143 (Miss. App. 2011).

Regarding the warranty of merchantability, Mississippi law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant

8

with respect to goods of that kind."  Miss. Code Ann. § 75-2-314.  The statute further requires that the merchandise be "fit for the ordinary purposes for which such goods are used; . . . [a]re adequately contained, packaged and labeled as the agreement may require; and [c]onform to the promises or affirmations of fact made on the container or label if any."  *Id*.  "The implied warranty of merchantability is not intended to guarantee that the goods be the best or of the highest quality–the standard is measured by the generally acceptable quality under the description in the contract."  *Duett Landforming, Inc. v. Belzoni Tractor Co.*, 34 So.3d 603, 611 (Miss. App. 2009) (internal quotation marks and citations omitted).  "Where a product conforms to the quality of other similar products in the market, it will normally be merchantable."  *Id*. (internal quotation marks and citation omitted).  Ms. Averhart's claim fails under either theory.

Because Ms. Averhart is asserting a genuine issue of material fact to prevent the grant of summary judgment for the Defendants, she must support her position either by "citing to particular parts of materials in the record" or by "showing that the . . . adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  This she has not done.  Ms. Averhart's brief in opposition to the motion for summary judgment regarding the implied warranty allegation, either under the doctrine implied warranty of fitness or merchantability, fails to meet this standard.

In addition, as the nonmoving party, Ms. Averhart "may not rest upon [her] . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial."  *Moldowan*, 578 F.3d at 374.  Again, this she has not done.  Ms. Averhart has failed to cite to specific facts in the record to establish a genuine issue regarding this claim under either warranty theory.

Further, there is no evidence that the Ortho Evra® patches which were provided "were unfit for the particular purpose" for which they were supplied. *Moss*, 935 So.2d at 399. This Court has specifically found that the medical care worker who provided the patches acknowledged she read the package insert and the detailed patient labeling for the Ortho Evra® patch. She was aware of the risks of using the Ortho Evra® patch, including the risks for deep vein thrombosis, pulmonary embolism, ischemic strokes, myocardial infarctions, and heart attacks. (Doc. No. 28, p. 7). The Court further noted that a warning is adequate as a matter of law where it warned of the potential for the condition that befell Ms. Averhart. (Doc. No. 28, p. 8 (citing *Wyeth Labs., Inc. v. Fortenberry*, 530 So.2d 688, 693 (Miss. 1988)). Thus, the patches were adequately contained, packaged, and labeled, and conformed to the promises or affirmations of fact made. *See* Miss. Code Ann. § 75-2-314(2). Because there is no evidence that the patches were defective and the Defendants provided adequate warning labels, which included a warning of the side effect which Ms. Averhart experienced, Ms. Averhart has not established a claim under either the doctrines of implied warranty of fitness or merchantability.

Ms. Averhart's fraud claim also fails. In Mississippi,

[t]he elements of fraud are well established: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So.2d 331, 343 (Miss. 2004) (citations omitted).

The facts establish that Ms. Averhart made her decision as to which birth control method to use, not on any statement by the Defendants, but rather based upon her discussions with her

10

healthcare provider.  Therefore, there was no fraudulent interaction between Ms. Averhart and the

Defendants.  This Court has previously ruled on Ms. Averhart's failure to warn claims.  This

ruling establishes that there can be no claim that the Defendants made false statements to her

healthcare providers.  Because Ms. Averhart has not established the required elements of fraud

under Mississippi law, Defendants are entitled to summary judgment on this claim.

VI.  Conclusion

Accordingly, Defendants' motion for summary judgment (Doc. No. 31) is granted.

IT IS SO ORDERED.

    S/ <i>David A. Katz</i>     <br>DAVID A. KATZ<br>U. S. DISTRICT JUDGE

11